763 So.2d 519 (2000)
Ossie L. DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-707.
District Court of Appeal of Florida, Fifth District.
July 21, 2000.
*520 Joseph M. Touger, of Escobar, Gomez & Ramirez, P.A., Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, M., Senior Judge.
Davis appeals the denial of his motion to suppress evidence and the denial of his motion to withdraw his plea of nolo contendere to various charges. We affirm.
Davis was charged with trafficking in 28 to 200 grams of cocaine, battery on a law enforcement officer, resisting arrest with violence and possession of 20 grams or less of marijuana. He filed three separate motions to suppress, all of which contain essentially the same elements and which assert that the officers had no legal right to be on his property. After reviewing the record, we cannot conclude that the trial court abused its discretion in denying these motions.
The evidence adduced at the hearings on the motions to suppress revealed that Donna Stucchio of the Department of Children and Families went to a home shared by Davis and Latrishan Stewart because of a report that Stewart's three-year-old son had been exposed to drugs. Stucchio was accompanied by a deputy sheriff. She took no action as to the son, but as she was leaving, she saw something white on the floor. She returned later that day, but no one was home. She returned to the residence two days later, this time accompanied by Detective Clifton and Deputy Mott. Both Davis and Stewart were home, but Davis was on his way out. Stucchio went into the residence while the officers remained outside on the porch because they were told that Stewart did not want the officers in the house. Detective Clifton testified that as Davis exited the house and walked past her, she could see a plastic baggie partly exposed in his pocket, and she could see, based on her training and experience, what appeared to her to be cocaine. Davis was stopped and searched, the baggie was produced and did contain cocaine. It was during this search that Davis resisted arrest by flailing his arms, striking Clifton in the face. Once he was restrained, the premises were secured, a search warrant was obtained and during the subsequent search, the officers found a gun, money, crack cocaine and drug paraphernalia.
Davis contends that the officers were told to leave the premises, and that their continued presence was a trespass. This was disputed, however, by the officers' testimony that they were only asked not to enter the residence. Their presence on the porch did not invade any expectation of privacy, where no such expectation exists. See, State v. Morsman, 394 So.2d 408 (Fla.1981); Glass v. State, 736 So.2d *521 788, 789 (Fla. 2d DCA 1999). It was for the trial court to resolve the conflict in the testimony, and there is sufficient evidence to support the trial court's conclusion that the officers had a legal right to be where they were. See Younger v. State, 433 So.2d 636 (Fla. 5th DCA 1983).
More troubling is Davis' argument that the trial court erred in denying his motion to withdraw his plea. Appellant was sentenced on February 18, 1999 and on March 12, 1999 at 4:09 P.M. he filed a pro se notice of appeal to review the judgment and sentence. On March 12, 1999 at 4:09 P.M. he also filed in the trial court a motion to withdraw his plea which the trial court later denied. During oral argument before us, the question arose as to whether the trial court had jurisdiction to consider the motion to withdraw the plea once the notice of appeal was filed. Cases such as Lowe v. State, 644 So.2d 510 (Fla. 2d DCA 1994), have held that a trial court loses jurisdiction to consider a motion to withdraw a plea once the notice of appeal is filed. The facts here, however are unique in that the notice of appeal and the motion to withdraw the plea were both filed at the identical moment.
Under these peculiar and particular circumstances we believe that Florida Rule of Appellate Procedure 9.020(h) provided the trial court with jurisdiction to hear the motion. Rule 9.020(h), in pertinent part, provides:
Rendition (of an Order). An order is rendered when a signed, written order is filed with the clerk of the lower tribunal. However, unless another applicable rule of procedure specifically provides to the contrary, if a final order has been entered and there has been filed in the lower tribunal an authorized and timely motion ... to correct a sentence or order of probation pursuant to Florida Rule of Criminal Procedure 3.800(b)(1); to withdraw the plea after sentencing pursuant to Florida Rule of Criminal Procedure 3.170(l) ... the following exceptions apply:
* * *
(3) If such a motion or motions have been filed and a notice of appeal is filed before the filing of a signed, written order disposing of all such motions, all motions filed by the appealing party that are pending at the time shall be deemed abandoned, and the final order shall be deemed rendered by the filing of the notice of appeal as to all claims between parties who then have no such motions pending between them. However, a pending motion to correct a sentence or order of probation or a motion to withdraw the plea after sentencing shall not be affected by the filing of a notice of appeal from a judgment of guilt. In such instance, the notice of appeal shall be treated as prematurely filed and the appeal held in abeyance until the filing of a signed, written order disposing of such motion.
The trial court had jurisdiction to consider the motion.
Davis contends that the trial judge erred in denying his motion to withdraw his plea, because, he asserts, the trial court conducted an inadequate inquiry into the voluntariness of his plea, citing Koenig v. State, 597 So.2d 256 (Fla.1992).[1] In Koenig[2] there was a signed plea agreement and in response to the judge's inquiry the defendant stated that he had discussed it with his attorney. The court noted that the record was devoid of anything to demonstrate that defendant could understand the form, the extent of his education or *522 that he could even read, or what his attorney had told him. In reversing the conviction, the court noted that it could not be assured from the "superficial plea colloquy" that defendant's plea was voluntary and intelligent.
Here, there was more than a superficial colloquy. In response to specific questions by the court, defendant gave his name, social security number, that he was a citizen and had completed the 10th grade, had a G.E.D. and could read. He also acknowledged that he had read the written plea agreement, understood it, had had ample time to discuss its terms and ramifications with his attorneys who had answered all his questions to his complete satisfaction. He further stated that he was satisfied with the advice given him by his attorneys, that the plea was in his best interest and that he was entering it freely and voluntarily without compulsion from anyone and with no promises except what was contained in the written plea agreement. When the court asked "Do you understand that by your plea you're giving up your right to trial and all the legal and constitutional protections that goes [sic] with the right to trial?" he responded in the affirmative. Davis fails to demonstrate any prejudice because of the trial court's failure to strictly follow the colloquy set forth in Florida Rule of Criminal Procedure 3.172, and in the absence of an allegation of prejudice or manifest injustice to the defendant, the trial court's failure to adhere to said rule is an insufficient basis for reversal. Wuornos v. State, 676 So.2d 966 (Fla.1995). We can only conclude, as did the trial court, that defendant had full understanding of the significance of his plea and that it was freely and voluntarily entered. See Elledge v. State, 706 So.2d 1340 (Fla.1997).
AFFIRMED.
W. SHARP, and SAWAYA, JJ. concur.
NOTES
[1] Davis also contends that there was no factual basis for the plea stated in the record of the plea hearing, but this latter assertion was not raised in the motion to withdraw the plea. Nevertheless, there is an adequate factual basis for the plea contained in the record. See Suarez v. State, 616 So.2d 1067 (Fla. 3d DCA 1993).
[2] Koenig was a death penalty case, and the supreme court held that because of its constitutional duty to review such cases it could determine whether a factual basis existed for the plea despite the fact that this ground had not been asserted below. That holding specifically applies to death penalty cases.